NIQA

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

18    3723

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JAMES EVERETT SHELTON
316 Covered Bridge Road
King of Prussia, PA 19406

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
FCS CAPITAL LLC
30 Montgomery Street Suite 1200
Jersey City, NJ 07302

County of Residence of First Listed Defendant    Hudson
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Jacovetti Law, P.C.
Robert C. Jacovetti, Esquire
194 Old Country Road, Mineola, NY 11501

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq
Brief description of cause:
Violations of the TCPA, 47 U.S.C. § 227

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
36,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE  James E Shelton    DOCKET NUMBER

DATE
08/30/2018

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**18   3723**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 316 Covered Bridge Road, King of Prussia, PA 19406 _____

Address of Defendant: _____ 30 Montgomery Street Suite 1200, Jersey City, NJ 07302 _____

Place of Accident, Incident or Transaction: _____ By phone call to my private telephone. _____

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/30/2018   _James E. Shelton_   _____
    *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
   *(Please specify):* Violations of the TCPA, 47 U.S.C. § 227

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, James Everett Shelton _____, counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 08/30/2018   _James E. Shelton_   _____
    *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

JAMES EVERETT SHELTON                    :          CIVIL ACTION

v.                                       :

FCS CAPITAL LLC, et. al                  :          NO. **18    3723**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          ( )

(f) Standard Management – Ca~~ ~~ne of the other tracks.                                    (X)


8/30/3018                      *James E. Shelton*
**Date**                       **Attorney-at-law**              **Attorney for**
484-626-3942                   888-329-0305                     jeshelton595@gmail.com


**Telephone**                  **FAX Number**                   **E-Mail Address**


(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

NIQA

**James Everett Shelton**
**316 Covered Bridge Road**
**King of Prussia, PA 19406**
**(484) 626-3942**
**jeshelton595@gmail.com**



**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES EVERETT SHELTON**<br>**316 Covered Bridge Road**<br>**King of Prussia, PA 19406**<br><br>      **Plaintiff,**<br><br>          **vs.**<br><br>**FCS CAPITAL LLC, d/b/a FUNDING**<br>**CAPITAL SOURCE, d/b/a BUSINESS DEBT**<br>**EXPERTS, f/k/a BUSINESS DEBT RELIEF LLC**<br>**30 Montgomery Street Suite 1200,**<br>**Jersey City, NJ 07302**<br><br>**EMIL YASHAYEV, individually and as Owner/**<br>**CEO and Managing Member of FCS Capital**<br>**LLC,**<br>**1088 Dearborn Rd,**<br>**Fort Lee, NJ 07024**<br><br>**BARRY SHARGEL, individually and as**<br>**Managing Member of FCS Capital  LLC,**<br>**30 Montgomery Street Suite 1200,**<br>**Jersey City, NJ 07302**<br>          **Defendants** | **Civil Action**<br><br>No. __18    3723__<br><br><br><br><br>FILED<br><br>AUG 3 0 2018<br><br>KATE BARKMAN, Clerk<br>By_____ Dep. Clerk<br><br><br><br><br>**Jury Trial Demanded** |

─────────────────────────────

## COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory

damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47

U.S.C. § 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing

tortious activity of the FCS CAPITAL LLC, d/b/a FUNDING CAPITAL SOURCE, d/b/a



BUSINESS DEBT EXPERTS, f/k/a BUSINESS DEBT RELIEF LLC ("FCS"), EMIL YASHAYEV ("Mr. Yashayev") and BARRY SHARGEL ("Mr. Shargel"), collectively "Defendants", in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("ATDS calls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.      Introduction

1.      Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.      Plaintiff brings this action to challenge FCS's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges FCS' and FCS's agents' illegal telephone solicitations by which it markets its products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and FCS's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

2

4.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5.      Plaintiff alleges that Defendants made or commissioned numerous telemarketing calls Plaintiff's cellular telephone number for the purposes of advertising FCS's services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6.      Plaintiff never consented to receive any of these calls, which were made *after* Plaintiff wrote to one of FCS' employees and told him Plaintiff did not wish to receive any telemarketing calls.

7.      All of the claims asserted herein arise out of FCS's illegal telephone solicitation campaign and are a common fact pattern.

## II.      Jurisdiction and Venue

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County. Defendants conduct business in this judicial district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484) Pennsylvania area code. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent…; it occurred when the [facsimile] was received."

## III.      Parties

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

3

10.    Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

11.    Defendant FCS CAPITAL LLC d/b/a FUNDING CAPITAL SOURCE, d/b/a BUSINESS DEBT EXPERTS, f/k/a BUSINESS DEBT RELIEF ("FCS") is a New Jersey limited liability company with a registered principal address of 30 Montgomery Street Suite 1200, Jersey City, NJ 07302, which transacts business in, *inter alia*, Montgomery County, Pennsylvania. FCS is not registered to do business in the Commonwealth of Pennsylvania, however, FCS markets and sells, *inter alia*, business loan and/or "merchant cash advance" services to people in Pennsylvania.

12.    Upon information and belief, Defendant EMIL YASHAYEV ("Mr. Yashayev"), at or about the time the within violations occurred, was owner, CEO, and a Managing Member of FCS CAPITAL LLC. Upon information and belief, Mr. Yashayev may be served at his usual place of abode, 1088 Dearborn Rd, Fort Lee, NJ 07024. Mr. Yashayev reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in FCS's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in New Jersey, Pennsylvania, and nationwide.

13.    Upon information and belief, Defendant BARRY SHARGEL ("Mr. Shargel"), at or about the time the within violations occurred, was an officer, manager, Managing Member, partner or *de facto* principal of FCS CAPITAL LLC. Upon information and belief, Mr. Shargel may be served at his usual place of business, 30 Montgomery Street Suite 1200, Jersey City, NJ 07302. Mr. Shargel reaps the benefit of the tortious and illegal conduct described herein that is

4

technically carried out only in FCS's name. Such tortious, or *ultra vires,* conduct exceeds the permissible actions of corporations both in New Jersey, Pennsylvania, and nationwide.

14.     At all times herein mentioned, defendants FCS, Mr. Yashayev, Mr. Shargel, and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

15.     At all times herein mentioned, the Defendants, and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

16.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

17.     At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

5

## Background

## The Telephone Consumer Protection Act

**18.**     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ...

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The National Do-Not-Call Registry

**19.**     The National Do Not Call Registry allows consumers to register their telephone numbers

and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47

C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database

administrator." Id.

**20.**     The TCPA and implementing regulations prohibit the initiation of telephone solicitations

to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

§ 64.1200(c)(2).

### The TCPA Prohibits Automated Telemarketing Calls

**21.**     The TCPA makes it unlawful to make any call (other than a call made for emergency

purposes or made with the prior express written consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice ... to any telephone number

assigned to a ... cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA

provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. §

227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

**22.**     According to findings by the Federal Communications Commission ("FCC"), the agency

Congress vested with authority to issue regulations implementing the TCPA, such calls are

6

prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

23.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

> *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

24.     Under the TCPA, an individual such as Mr. Yashayev and/or Mr. Shargel may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

47 U.S.C. § 217 (emphasis added).

25.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

26.     Many Courts have relied on the precedent set in *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) when determining that individual officers many be held personally liable for TCPA violations. In that case, the Western District of Texas held:

"The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasively argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

8

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" and the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court **899** holds defendants Greg and Michael Horne are jointly and severally liable with defendant American Blastfax, Inc., for all TCPA damages in this lawsuit."

See: https://law.justia.com/cases/federal/district-courts/FSupp2/164/892/2459891/

27.    In *Physicians Healthsource, Inc. v. A-S Medication Solutions LLC*, Case No. 12 c 5105, 2018 WL 3993409 (N.D. Ill. Aug. 21, 2018) the Court faced a summary judgment motion from the Plaintiff seeking to resolve issues of liability against Defendants–including personal liability against A-S Solutions' CEO Walter Huff– on a certified class involving 15,666 faxes that allegedly violated the TCPA. The Court adopted the *American Blastfax, Inc.* standard and held the CEO personally liable for the TCPA violations that occurred. See *Physicians Healthsource, Inc.* at *8 (citing the rule that "an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved."). The Court then found that Huff had personally participated in the faxes because he dictated the content of the faxes and authorized sending the faxes. This, the Court found, was sufficient to justify personal liability on Huff.

28.    Defendants Mr. Yashayev and Mr. Shargel are personally liable under the "participation theory" of liability because they were the Principal owners of FCS, knew of FCS's violations, and directed employees and/or agents of FCS to continue making those violations. Additionally, Mr. Shargel himself participated in some of these violations, including directly calling the Plaintiff in violation of the TCPA, and e-mailing the Plaintiff to follow up.

29.     This is because Defendants Mr. Yashayev and Mr. Shargel authorized and oversaw each of FCS's telemarketing processes and calls which were made on behalf of FCS.

30.     Furthermore, Defendants Mr. Yashayev and Mr. Shargel are also personally liable because they were responsible for ensuring FCS's agents and/or employees' TCPA compliance.

### Factual Allegations

#### A. The Worsening Problem of Robocalls and Illegal Telemarketing

31.     Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

32.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

33.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

34.     In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017),

10

https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

**35.**     Recently, *The New York Times* reported extensively on the surging number of robocall complaints filed by consumers with the FTC and widespread consumer outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging,* N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

**B. Defendants' Role in this Explosion of Illegal Robocalling**

**36.**     FCS provides loans to companies.

**37.**     FCS uses telemarketing to promote its products and services.

**38.**     FCS's telemarketing efforts also include the use of automated dialing equipment to send automated calls to consumers nationwide.

**39.**     On March 16, 2018, Plaintiff received a telemarketing call from Fast Advance Funding, LLC. As a result of this telemarketing call, Plaintiff received an e-mail from "Ben Schorr", ben@fastadvancefunding.com. The subject-line of the header read "Fast Advance Funding/ Michael Deangelis". The e-mail included the contact information of a "Mike Deangelis", a Senior Funding Specialist at Fast Advance Funding. This contact information included Mr. Deangelis' personal cell phone number, 347-493-7857.

**40.**     Fast Advance Funding, LLC ("FAF") continued to make telemarketing calls to Plaintiff in the following six weeks. On May 1, 2018 at 2:45 PM, Plaintiff sent an e-mail to FAF's legal counsel, Norman M. Valz, and also sent an e-mail to ben@fastadvancefunding.com, which was the same e-mail address that had Michael Deangelis' contact information and cell phone number. In this e-mail, Plaintiff expressly told FAF and Mr. Deangelis that Plaintiff did not wish to

receive any more telemarketing calls, and threatened to file a formal claim.

**41.**     On May 1, 2018 at 5:06 PM, *in a non-actionable phone call from which Plaintiff is not seeking to recover damages,* Michael Deangelis called Plaintiff from his personal cell phone number, 347-493-7857. Mr. Deangelis said that he no longer worked for FAF, and said he now worked for FCS. Mr. Deangelis asked Plaintiff if he was interested in receiving some working capital, however, Plaintiff firmly told Mr. Deangelis that he was not interested and merely wanted to be left alone. Plaintiff further told Mr. Deangelis that he was going to sue FAF for violating the TCPA, and told Mr. Deangelis that he has sued many telemarketers for illegally calling his phone. Mr. Deangelis said the company he now works for, FCS, is a good company and does not violate the TCPA. Plaintiff told Mr. Deangelis that his current company, FCS, had better not call the Plaintiff, or he would sue FCS, too. Plaintiff asked Mr. Deangelis why he was still receiving e-mails from a FAF e-mail address if he no longer was employed with FAF, however, Mr. Deangelis said this e-mail was forwarded to his personal e-mail address.

**42.**     This telephone call and e-mail constituted express notice that Plaintiff did not want to be contacted by telemarketers or by Mr. Deangelis.

**43.**     Mr. Deangelis confirmed receipt of Plaintiff's e-mail by virtue of calling the Plaintiff and discussing the matter.

**44.**     Mr. Deangelis was employed by FCS on May 1, 2018.

**45.**     Mr. Deangelis knew that Plaintiff did not want to receive any telemarketing calls, but did not place Plaintiff's number on FCS' internal Do-Not-Call list, as evidenced by the following factual allegations.

**46.**     On May 4, 2018 at 3:19 PM, the Plaintiff received a telemarketing call on his cellular telephone number (484) 626-3942 from a number which displayed on Plaintiff's caller

12

identification as 347-707-7972.

**47.**    Plaintiff received all of the calls as alleged herein on his personal cellular telephone

number, (484) 626-3942. Plaintiff's number has been successfully registered on the National Do-

Not-Call registry since June 26, 2015, more than thirty-one (31) days prior to the call, and has

also been successfully registered on the Pennsylvania Do-Not-Call list since May 15, 2018.

**48.**    (484) 626-3942 is the only telephone number which Plaintiff owns.

**49.**    Plaintiff was connected with Michael Deangelis at FCS.

**50.**    Plaintiff heard a scripted sales pitch about business funding.

**51.**    During that call, Plaintiff took steps to ascertain the identity of the caller and feigned

interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with

their company information. However, Plaintiff never consented to receiving any additional

telemarketing calls.

**52.**    Mr. Deangelis then attempted to sell Plaintiff FCS' services.

**53.**    "Business Debt Experts" was another name Mr. Deangelis used on the phone call. Upon

information and belief, this is a fictitious name owned and/or used by FCS.

**54.**    As a result of this call, Michael Deangelis, michael@businessdebtexperts.com,

contacted the Plaintiff by e-mail attempting to get the Plaintiff to purchase FCS's services. This

e-mail included a link to FCS's website, fundingcapitalsource.com, and included a PDF

attachment "FCS CAPITAL APP" for Plaintiff to fill out and return to FCS. The PDF application

was on FCS' letterhead and included FCS's logo, name, address, telephone and fax numbers.

**55.**    During this phone call, Plaintiff reminded Mr. Deangelis that he had spoken to him just

three (3) days ago and that Plaintiff had sent Mr. Deangelis an e-mail telling him not to make

telemarketing calls to his phone. Mr. Deangelis said that he talked with "hundreds of people

13

every day" but that he did remember their conversation. Nevertheless, despite Plaintiff's admonition that Plaintiff would file a formal claim against a telemarketer that illegally called his phone, and despite Plaintiff's request to not receive any additional telemarketing calls, Mr. Deangelis did not comply with Plaintiff's requests to be placed on FCS' internal Do-Not-Call list.

**56.**     On May 7, 2018 at 12:28 PM, Mr. Deangelis called Plaintiff again from his personal cell phone number, 347-493-7857, to attempt to get the Plaintiff to purchase FCS's services. When Plaintiff realized it was Mr. Deangelis calling again, he simply terminated the call, because he was busy.

**57.**     On May 7, 2018 at 12:30 PM, Mr. Deangelis sent a text message to Plaintiff's cell phone attempting to get the Plaintiff to purchase FCS's services.

**58.**     A text message is considered a "call" under the TCPA.

**59.**     On May 7, 2018 at 2:04 PM, Plaintiff received a telemarketing call which displayed on Plaintiff's caller identification as 347-707-7962.

**60.**     Plaintiff was connected with Michael Deangelis at FCS.

**61.**     Mr. Deangelis once again attempted to sell the Plaintiff FCS' services, but did not send Plaintiff an e-mail.

**62.**     On May 8, 2018 at 11:46 AM, Plaintiff received a call which displayed on Plaintiff's caller identification as 347-707-7943.

**63.**     Plaintiff was connected with Michael Deangelis at FCS.

**64.**     Mr. Deangelis then attempted to sell Plaintiff FCS' services.

**65.**     Since this was a different incoming caller ID, Plaintiff wanted to make sure that it was FCS calling, and not some other lending company.

14

66.     As a result of this call, Mr. Deangelis, michael@businessdebtexperts.com, contacted the

Plaintif by e-mail at 11:56 AM on May 8, 2018, attempting to get the Plaintiff to purchase FCS's

services. This e-mail included a link to FCS's website, fundingcapitalsource.com, and included a

PDF attachment "FCS CAPITAL APP" for Plaintiff to fill out and return to FCS. The PDF

application was on FCS' letterhead and included FCS's logo, name, address, telephone and fax

numbers.

67.     On May 8, 2018 at 4:25 PM, Plaintiff received another call from FCS at 347-707-7943.

Plaintiff simply hung up because he was not interested in the defendants' services.

68.     On May 17, 2018 at 2:06 PM, Plaintiff received a call which displayed on Plaintiff's

caller ID as 201-455-3787.

69.     The telemarketing call began with a distinctive click and pause after the Plaintiff

answered.

70.     In fact, while waiting for a human being to arrive on the phone line, the Plaintiff

repeatedly said "hello" into his telephone with no response.

71.     Plaintiff heard a "bloop" balloon-popping sound, followed by choppy audio and a

machine noise, before he was connected with defendant Barry Shargel at FCS.

72.     Mr. Shargel attempted to sell FCS' services to the Plaintiff.

73.     As a result of this automated call, Barry Shargel, Director of Operations and Managing

Member of FCS, barry@fundingcapitalsource.com, contacted the Plaintiff at 2:12 PM on May

17, 2018 attempting to get the Plaintiff to purchase FCS's services.

74.     On May 22, 2018 at 12:15 PM, Plaintiff received an automated call from 347-707-7973.

The telemarketing call began with a distinctive click and pause after the Plaintiff answered.

75.     These facts, as well as the geographic distance between the Plaintiff and the Defendant,

as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. 227(a)(1).

76.     In fact, while waiting for a human being to arrive on the phone line, the Plaintiff repeatedly said "hello" into his telephone with no response.

77.     Plaintiff heard a "bloop" balloon-popping sound, followed by choppy audio and a machine noise, before he was connected with "Anthony Diaz" at FCS.

78.     Plaintiff then received a scripted sales pitch about business funding from "Anthony Diaz".

79.     As a result of this automated call, Anthony Diaz, anthony@businessdebtexperts.com, contacted the Plaintiff via e-mail on May 22, 2018 at 12:31 PM, attempting to get the Plaintiff to purchase FCS' services. This e-mail included a link to FCS's website, fundingcapitalsource.com, and included a PDF attachment "FCS CAPITAL APP" for Plaintiff to fill out and return to FCS. The PDF application was on FCS' letterhead and included FCS's logo, name, address, telephone and fax numbers.

80.     On May 23, 2018 at 11:37 AM, Plaintiff received an automated call which displayed on Plaintiff's caller identification as 646-766-9487. The telemarketing call began with a distinctive click and pause after the Plaintiff answered.

81.     In fact, while waiting for a human being to arrive on the phone line, the Plaintiff repeatedly said "hello" into his telephone with no response.

82.     Plaintiff heard a "bloop" balloon-popping sound, followed by choppy audio and a machine noise, before he was connected with "Anthony Diaz" at FCS.

83.     Plaintiff then received a scripted sales pitch about business funding from "Anthony

16

Diaz", on behalf of FCS.

**84.**     As a result of this automated call, Anthony Diaz, anthony@businessdebtexperts.com,

contacted the Plaintiff via e-mail on May 23, 2018 at 11:45 AM, attempting to get the Plaintiff to

purchase FCS' services. This e-mail included a link to FCS's website, fundingcapitalsource.com,

and included a PDF attachment "FCS CAPITAL APP" for Plaintiff to fill out and return to FCS.

The PDF application was on FCS' letterhead and included FCS's logo, name, address, telephone

and fax numbers.

**85.**     On May 24, 2018 at 3:29 PM, Plaintiff received an incoming call from "Anthony Diaz"

at FCS, from the caller ID 347-707-7943. Plaintiff allowed the call to go to his voicemail.

"Anthony Diaz" then left Plaintiff a voicemail attempting to get the Plaintiff to purchase FCS'

services.

**86.**     On July 23, 2018 at 3:12 PM, Plaintiff received an incoming call from "Anthony Diaz"

at FCS, from the caller ID 347-707-7973.

**87.**     The telemarketing call began with a distinctive click and pause after the Plaintiff

answered.

**88.**     In fact, while waiting for a human being to arrive on the phone line, the Plaintiff

repeatedly said "hello" into his telephone with no response.

**89.**     Plaintiff heard a "bloop" balloon-popping sound, followed by choppy audio and a

machine noise, before he was connected with "Anthony Diaz" at FCS.

**90.**     Plaintiff then received a scripted sales pitch about business funding from "Anthony

Diaz", on behalf of FCS.

**91.**     As a result of this automated call, on July 23, 2018 at 3:30 PM, "Anthony Diaz",

anthony@fundingcapitalsource.com, sent Plaintiff an e-mail attempting to get Plaintiff to

purchase FCS' services.

**92.**     On July 25, 2018 at 3:44 PM, Plaintiff received a similar ATDS call with a distinctive

click and pause at the beginning from "Anthony Diaz" using the caller ID 347-707-7973.

Plaintiff hung up when he realized it was FCS calling, as he was not interested and wanted to be

left alone.

**93.**     On July 26, 2018 at 10:27 AM, Plaintiff received an incoming call from "Anthony

Diaz" at FCS, from the caller ID 347-707-7943. During this voicemail, "Anthony Diaz"

attempted to get the Plaintiff to purchase FCS's services.

**94.**     On August 1, 2018 at 10:57 AM, Plaintiff received an automated call from 347-707-

7996. Upon answering, Plaintiff heard a distinctive click and pause after the Plaintiff answered.

**95.**     In fact, while waiting for a human being to arrive on the phone line, the Plaintiff

repeatedly said "hello" into his telephone with no response.

**96.**     Plaintiff heard a "bloop" balloon-popping sound, followed by choppy audio and a

machine noise, before he was connected with "Anthony Diaz" at FCS.

**97.**     Plaintiff then received a scripted sales pitch about business funding from "Anthony

Diaz", on behalf of FCS.

**98.**     As a result of this automated call, on August 1, 2018 at 11:07 PM, "Anthony Diaz",

anthony@fundingcapitalsource.com, sent Plaintiff an e-mail attempting to get Plaintiff to

purchase FCS' services.

**99.**     FCS did not have the Plaintiff's prior express written consent to make these calls.

**100.**     In fact, before filing this lawsuit, the Plaintiff wrote to FCS via e-mail on August 1,

2018 at 7:54 PM asking if they had his prior express written consent to make the calls, but FCS

did not provide any evidence of consent.

18

**101.**     As a result of that e-mail, the Plaintiff was contacted via telephone at approximately

12:30 PM EST on August 3, 2018 by Attorney Robert C. Jacovetti, of Jacovetti Law, P.C. Mr.

Jacovetti stated that he represents Funding Capital Source.

**102.**     Mr. Jacovetti sent Plaintiff a letter dated August 9, 2018 as a follow up to the August 3,

2018 telephone conversation. Mr. Jacovetti's letter stated: "My client has instructed all staff

members not to attempt to contact you in any manner or form".

**103.**     Attorney Jacovetti and the Plaintiff discussed the claims in this lawsuit on several

occasions via telephone and e-mail, including as recently as August 23, 2018.

**104.**     However, despite these ongoing pre-suit negotiations and discussions, the Defendants

did not comply with Plaintiff's request not to get any additional calls.

**105.**     On August 27, 2018 at 11:24 AM, Plaintiff received a telemarketing call which

displayed on Plaintiff's caller ID as 347-707-7995.

**106.**     The telemarketing call began with a distinctive click and pause after the Plaintiff

answered.

**107.**     In fact, while waiting for a human being to arrive on the phone line, the Plaintiff

repeatedly said "hello" into his telephone with no response.

**108.**     Plaintiff heard choppy audio and a machine noise, before he was connected with

"Adam" at FCS.

**109.**     Plaintiff then received a scripted sales pitch about business funding from "Adam", on

behalf of FCS.

**110.**     Plaintiff asked "Adam" why FCS was continuing to make telemarketing calls to the

Plaintiff, despite the fact that he had clearly told FCS to stop calling, and despite the fact that

Plaintiff had threatened FCS with litigation. "Adam" said that he did not know.

**111.**     Plaintiff sues Mr. Yashayev and Mr. Shargel individually under the Responsible Corporate Officer Doctrine.

**112.**     Mr. Yashayev and Mr. Shargel make the day to day decisions for FCS

**113.**     The defendants' *modus operandi* was to incorporate and use ATDS to solicit people including Plaintiff.

**114.**     The following is a spreadsheet listing dates and times that Plaintiff received telemarketing calls from the defendants:

| Calls to Plaintiff's Cell Phone (484) 626-3942 | | | | |
|---|---|---|---|---|
| **Date:** | **Time:** | **Caller ID:** | **Notes** | **ATDS Used?** |
| 5/4/2018 | 3:19 PM | 347-707-7972 | Michael Deangelis | No |
| 5/7/2018 | 12:28 PM | 347-493-7857 | Michael Deangelis' personal cell phone | No |
| 5/7/2018 | 2:04 PM | 347-707-7961 | Michael Deangelis | No |
| 5/8/2018 | 11:46 AM | 347-707-7943 | Michael Deangelis | No |
| 5/8/2018 | 4:25 PM | 347-707-7943 | Michael Deangelis | No |
| 5/17/2018 | 2:06 PM | 201-455-3787 | Barry Shargel | Yes |
| 5/22/2018 | 12:15 PM | 347-707-7973 | Anthony Diaz | Yes |
| 5/23/2018 | 11:37 AM | 646-766-9487 | Anthony Diaz | Yes |
| 5/24/2018 | 3:29 PM | 347-707-7943 | Anthony Diaz, left voicemail | No |
| 7/23/2018 | 3:12 PM | 347-707-7973 | Anthony Diaz | Yes |
| 7/25/2018 | 3:44 PM | 347-707-7973 | Anthony Diaz | Yes |
| 7/26/2018 | 10:26 AM | 347-707-7943 | Anthony Diaz, left voicemail | No |
| 8/1/2018 | 10:57 AM | 347-707-7996 | Anthony Diaz | Yes |

20

| 8/23/2018 | 11:24 AM | 347-707-7995 | Adam | Yes |
|-----------|----------|--------------|------|-----|

**101.** At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

**102.** Prior to these unsolicited calls, the Plaintiff has never done any business with FCS and Plaintiff never provided FCS with his cellular telephone number.

**103.** Plaintiff also requested in his e-mail to have his number placed on FCS's internal Do-Not-Call list, and requested to receive a copy of FCS's internal company Do-Not-Call policy.

**104.** Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

**105.** Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

**106.** Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

**107.** To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records

21

documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted FCS inquiring about the calls before filing this lawsuit.

**108.**     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**109.**     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is a residential telephone that is used for personal purposes.

**110.**     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**111.**     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

<u>**Causes Of Action**</u>

<u>**First Cause of Action**</u>

(Negligent Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

**112.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**113.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C.

§ 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**114.**   Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

<u>**Second Cause of Action**</u>

(Knowing and/or Willful Violation of the TCPA
"RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

**115.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**116.**   As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

**117.**   Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

<u>**Third Cause of Action**</u>

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**118.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**119.**   As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**120.**   Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

<u>**Fourth Cause of Action**</u>

23

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**121.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

**122.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble

damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47

U.S.C. § 227(c)(5).

**123.**     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**124.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

**125.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR

64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation,

pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**126.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

**127.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations

24

of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**128.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**129.** As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**130.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**131.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### WHEREFORE, Plaintiff prays for relief against defendants, as follows:
### IV.    Prayer for Relief
On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8.

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

25

Total statutory damages: **$36,000** (Fifteen counts of "Sales call/Sales Text to a number registered on the National Do-Not-Call Registry", Seven counts each of "ATDS call", and one count each of "Failure to provide a copy of Defendant's Do-Not-Call Policy" and "Failure to Put Plaintiff's Number on Defendant's Do-Not-Call list, with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

6. All such other and further relief as the Court deems proper.

### V.  Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: August 30, 2018

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

26

## **VERIFICATION**

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: August 30, 2018

*James E. Shelton*

JAMES EVERETT SHELTON