IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON,<br><br>Plaintiff<br><br>v.<br><br>FCS CAPITAL LLC, EMIL YASHAYEV, &<br>BARRY SHARGEL<br><br>Defendants | Case No. 2:18-cv-03723<br><br>Honorable Nitza I. Quiñones Alejandro |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**FACTUAL HISTORY AND PROCEDURAL BACKGROUND**

Plaintiff James Shelton initiated this action because Defendant FCS Capital LLC and its individual directors/owners made numerous telemarketing calls to Plaintiff in violation of the Telephone Consumer Protection Act. Defendants placed at least 18 violative telephone calls to Plaintiff, at least eight (8) of which were delivered via an Automated Telephone Dialing System ("ATDS"). The Defendants made the calls despite the placement of Plaintiff's cellular telephone number on the National Do Not Call Registry in 2015, long before the period of time when the calls began. The Defendants continued to place calls even after being given multiple do not call requests by Plaintiff and gaining actual knowledge that Plaintiff did not want to be called. Id. at ¶53, 192-193.

Rather than defending the instant action in a procedural manner or on the merits, the Defendants have opted to adopt a strategy of smearing the Plaintiff. Defendants have made a baseless naked assertion, void of any factual substantiation, that, Plaintiff is, "colluding with a

third party to try and extract an improper settlement where he is not entitled to one". See ECF No. 19 at 2.

Defendants have advanced one defense that is not based on personal attacks, specifically the claim that Plaintiff has suffered no damages related to the alleged calls. Plaintiff's Amended Complaint clearly pleads multiple valid injuries-in-fact, and the TCPA and Pennsylvania's Telemarketer Registration Act ("PTRA") both allow Plaintiff to recover statutory damages for these violations. While not based on a personal attack, Defendant's "no article III standing" "no subject matter" defense is lacking in merit.

If there were no injury-in-fact there would be no Article III standing and this Court would therefore have to dismiss the action, without prejudice, for lack of subject matter jurisdiction. In the absence of subject matter jurisdiction, the Court would not be able to adjudicate the matter on the merits and thus any dismissal on the basis of lack of Article III standing would have to be without prejudice.

However, this Court does not lack subject matter jurisdiction over the claims that serve as the basis of the instant action. Subject matter jurisdiction clearly exists.

For the following reasons, Defendants' motion to dismiss should be DENIED in its entirety.

**STANDARD OF REVIEW**

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint and is not an appropriate mechanism to resolve factual disputes. If a complaint plausibly states a claim and there is a set of facts consistent with the claims stated in the complaint, which would permit a plaintiff to recover, then a motion to dismiss for failure to state a claim should not be granted.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The question is not whether the claimant "will ultimately prevail… but whether his complaint [is] sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 529-30 (2011) (internal quotation marks omitted).

Thus, assessment of the sufficiency of a complaint is "a context- dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 98 (3rd Cir. 2010). In deciding a 12(b)(6) motion and when considering the legal sufficiency of a claim, courts accept factual allegations as true, drawing all reasonable inferences therefrom in the favor of the non-moving party. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). See also, Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

For this reason, district courts strongly disfavor Rule 12(b) (6) motions. Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir.1965); Kuromiya v. United States, 37 F. Supp. 2d 717, 722 (E.D.Pa.1999). A court must only dismiss a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J. Inc., 492 U.S. at 249-50, 109 S. Ct. 2893 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); Neitzke v. Williams, 490 U.S. 319, 326-327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).

The Defendant in the instant action is attempting to utilize a 12(b)(6) motion to resolve factual disputes, something that is generally only done via a motion brought pursuant to F.R.C.P 56. Defendant is clearly not entitled to the granting of a 12(b)(6) motion because Plaintiff has stated legally cognizable claims and sufficient facts to demonstrate he is plausibly entitled to the relief prayed for in the complaint.

### 1. 12(b)(1) and Article III Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). An injury-in-fact is "an invasion of a legally protected interest" that is "concrete and particularized." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3rd. Cir. 2009) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to Plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### ARGUMENT

**1.     Plaintiff Has Established that he Suffered Multiple Concrete Injuries**

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 - 2016, the Supreme Court confirmed that a plaintiff must plead a concrete and particularized injury, but clarified that an "intangible" injury is sufficient to confer Article III standing. Since *Spokeo,* district courts have repeatedly held that plaintiffs who allege under the TCPA that telemarketing calls to invade their privacy or are a nuisance, or who complain that the calls have occupied their phone lines preventing legitimate communications, have established Article III standing.[1] In fact, the Third Circuit Court of Appeals held:

> [W]e conclude that the injuries alleged by Susinno are concrete for two reasons. First, Congress squarely identified this injury. The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102-243, § 2. We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted [**10] a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect")…

---

[1] *See Cabiness v. Educ. Fin. Sols.*, No. 16-cv-01109-JST, 2016 WL 5791411 (N.D. Cal. Sept. 1, 2016) (a TCPA violation "necessarily harms the recipient of the unwanted calls such that the statutory violation is sufficient on its own to constitute an injury in fact"); *Cour v. Life360, Inc*., No. 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (rejecting Life360's argument that invasion of privacy is insufficient to confer Article III standing); *Juarez v. Citibank, N.A*., No. 16-CV-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) ("Juarez's allegation that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized' injury that establishes standing under *Spokeo*."); *Krakauer v. Dish Network L.L.C*., No. 1:14-CV-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("While class members did not necessarily pick up or hear ringing every call at issue in this case, each call created, at a minimum, a risk of an invasion of a class member's privacy" for purposes of Article III standing); *Caudill v. Wells Fargo Home Mtg., Inc*., Civ. No. 5:16–066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (noting that calls caused harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States").

> Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon seclusion claim by telephone calls "only when [such] calls are repeated with such persistence and frequency as to amount to . . . hounding." Intrusion upon Seclusion, Restatement (Second) of Torts § 652B, cmt d (1977). The Second [**11] Restatement suggests that because "two or three" [*352] calls would not be "highly offensive to the ordinary reasonable [person]," they traditionally would provide no cause of action. *Id.* Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.
>
> For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo*.

*Susinno v. Work Out World Inc.,* 862 F.3d 346, 351-52 (3d Cir. 2017). This Court should reach the same result here.

As explained below, Plaintiff suffered at least four concrete injuries that have been recognized under the common law, or by Congress: (1) invasion of privacy and a nuisance; (2) occupation of Plaintiff's cellular telephone; (3) wasted time; and (4) economic harm from the use of his cell phone. Each injury alone is sufficient in and of itself to establish Article III standing.

Plaintiff is a student at Case Western Reserve University now in his senior year as an undergraduate. These calls annoyed him and distracted him from his work as a student. This is a valid concrete injury in and of itself.

    a. <u>Defendant's Calls Invaded Plaintiff's Privacy and Were a Nuisance</u>

Nuisance and invasion of privacy are the precise harms that Congress sought to prevent in enacting the TCPA. Here, the Plaintiff has alleged that he suffered particularized and concrete injuries because the calls at issue were a nuisance, forced him to incur expenses, and violated his privacy rights—the exact harms that Congress sought to prevent in enacting the TCPA. *See* 47

6

U.S.C. § 227 (Congressional Findings); *see also Owens Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819-20 (8th Cir. 2012) ("[T]he ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA.").

      b.    <u>Defendant Harmed Plaintiff by Occupying his Cellular Telephone Line.</u>

One purpose of the TCPA is to "keep[] telephone lines from being tied up." *American States Ins. Co. v. Capital Assocs.*, 392 F.3d 939, 942 (7th Cir. 2004). Just as the privacy interests identified in the TCPA are grounded in the common law tort of invasion of privacy, the harm caused by unwanted telemarketing calls to cell phones has a close relationship to the harm recognized by the ancient common law tort "trespass to chattels." *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *6 (N.D.W. Va. June 30, 2016). Indeed, courts have repeatedly held that the electronic intrusion upon another person's computerized electronic equipment, even if temporary, constitutes trespass to chattels. *See, e.g., Czech v. Wall St. on Demand,* 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages).

*Spokeo* also recognized that an injury would satisfy Article III's "concreteness" requirement if the injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 2016 WL 2842447 at *7. Invasion of privacy is just such a harm long recognized by the common law. Almost all states recognize invasion of privacy as a common law tort. Accordingly, as the protections afforded consumers under the TCPA and FCRA have a close relationship to the right of privacy and nuisance long recognized by the common law, consumers who allege a violation of the TCPA

7

and FCRA adequately allege a concrete "injury in fact" sufficient to satisfy Article III's standing requirements.

      c.   <u>The Telemarketing Calls Harmed Plaintiff By Wasting His Time</u>

The first post-*Spokeo* decision to address whether a mere allegation of a TCPA violation satisfies Article III's requirement of "injury in fact" holds that wasting the recipient's time is a concrete injury that satisfies Article III:

> Here, the court is satisfied that Plaintiffs' allegations demonstrate "concrete injury" as elucidated in *Spokeo*. In *Spokeo*, the "injury" Plaintiffs incurred was arguably merely procedural and thus non-concrete. In contrast, the TCPA… violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls. The use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury. As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing.

*Booth v. Appstack, Inc.*, 2016 U.S.Dist LEXIS 68886, *15-17 (W.D. Wash. May 25, 2016). This decision is consistent with a number of pre-*Spokeo* decisions which also recognized that lost time is an adequate injury-in-fact in TCPA and other cases. *See Leung v. XPO Logistics, Inc*., 2015 WL 10433667, *4 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough, so XPO's motion must be denied."); *Martin v. Leading Edge Recovery Solutions., LLC*, 2012 WL 3292838, at *3-4 (N.D. Ill. Aug. 10, 2012) ("[plaintiffs suffered an injury in fact] because they had to spend time tending to unwanted calls").

      d.   <u>Plaintiff suffered tangible concrete harm in the form of economic damages from Defendant hijacking his cellular phone.</u>

Finally, not only has Plaintiff alleged concrete but "intangible" harms due to invasion of privacy, nuisance, trespass to chattel and wasted time, but he also sustained "tangible" sustained economic harm as a direct result of Target Advance's illegal telemarketing practices. The calls at

issue were received on a cell phone used by and paid for by Plaintiff. The FCC has long recognized that the recipient of telemarketing calls to a cell phone is "charged" for such calls, even if the cell phone subscribes to a plan that charges a flat monthly rate. *See In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14115 (2003); *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 562 (2007); *In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1839–40 (2012); *Fini v. DISH Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013*)*; *Lee v. Credit Management*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011). As Plaintiff paid for his monthly cell phone on which he received the telemarketing calls at issue, Plaintiff has alleged a tangible injury in fact sufficient to satisfy Article III's standing requirement. *See Warnick v. DISH Network, LLC,* 2014 U.S.Dist. LEXIS 138381 * 43-46 (D. Colo. Sept. 30, 2014) (rejecting argument that because plaintiff did not have a pay per call plan he did not suffer any injury as a result of the calls at issue); *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638 (7th Cir. 2012) (consumers ultimately bear the costs of calls to violative calls to cell phones regardless of "whether they pay in advance or after the minutes are used"). This "tangible" harm is sufficient to confer standing under *Spokeo*.

      The invasion of privacy and the allegation that the illegal calls cost Plaintiff money—financial harm—are not speculative future injuries or injuries based on the violation of rights provided in a statute. *See e.g. Jamison v. Esurance Insurance Services, Inc.,* 2016 WL 320646, *3 (N.D. Tex. Jan. 27, 2016) ("Here, Jamison alleged that when Esurance violated the TCPA, it caused her to incur cellular telephone charges or to reduce her previously-paid-for cellular telephone time, and that it invaded her privacy. Dkt. 7, Pl.'s First Am. Compl. ¶ 49. At this stage, this pleading is sufficient to establish an injury in fact.").

**2.     Plaintiff is alleging that the Telemarketing Calls at Issue in this Case did not come from another entity, Fast Advance Funding, LLC, Plaintiff is alleging that the Defendants in this case placed the calls in question and in dispute in the instant action.**

Defendants claim that an individual "Michael Deangelis" was an employee of Fast Advance Funding LLC ("FAF") during the time Plaintiff is alleging in his complaint. This is true, because Mr. Deangelis was an employee of FAF in March, 2018, when Plaintiff received an e-mail with Deangelis' name on it (referenced as Exhibit A in Defendant's Motion to Dismiss). But on May 1, 2018, Deangelis was working for Defendants FCS Capital LLC. See Pl.'s Amended Complaint at 47, 50. For reasons unknown, Defendants claim that Mr. Deangelis was calling with his cell phone, over which none of the Defendants would have control. Plaintiff has alleged the calls that came from Deangelis' cell phone number were made for telemarketing purposes in the scope of Deangelis' duties working for Defendants, in the furtherance of selling Defendant's services. Id at 58. The circumstances and nature of the calls made by Defendants to Plaintiff constitute genuine disputes of material fact.

Finally, Defendants raise an unconvincing argument that Mr. Deangelis could have been spoofing Defendants' telephone number in order to retaliate at Defendants for firing him. Once again, this is a factual dispute that cannot be appropriately resolved via a 12(b)(6) motion. Furthermore, Defendants claim that their internal records indicate that some of the calls did not take place from the alleged numbers listed in the Amended Complaint, but this is again yet another factual dispute. A 12(b)(6) motion tests the legal sufficiency of a plaintiff's claims, it is not something that can be granted on the basis of "motion to dismiss because we claim we didn't do what plaintiff alleges." The issues Defendants are raising are more appropriately resolved at the summary judgment stage of the proceedings.

## CONCLUSION

For the foregoing reasons, defendants' motion should be denied and the proceedings should go forward without delay.

Dated: February 26, 2019       By:   _/s/ Bryan Anthony Reo_____

Bryan Anthony Reo
REO LAW LLC
P.O. Box 5100
Mentor, OH 44061
Business: (216) 505-0811
(Mobile): (440) 313-5893
(E): Reo@ReoLaw.org
*Pro Hac Vice*


Clayton S. Morrow
Email: csm@consumerlaw365.com
Morrow & Artim, PC
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Telephone: (412) 281-1250

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2019, I filed the foregoing with the Clerk of Court, which will automatically send notification of such filing to all attorneys of record by placing the same on the Court's electronic docket.

                                               _/s/ Bryan Anthony Reo_____
                                                 Bryan Anthony Reo